J-S79033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.D., MOTHER | : | No. 986 EDA 2017 |

Appeal from the Order Entered February 22, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0000020-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: F.F., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.D., MOTHER | : | No. 989 EDA 2017 |

Appeal from the Order Entered February 22, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0000021-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.D., MOTHER | : | No. 991 EDA 2017 |

Appeal from the Order Entered February 22, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001567-2014

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED DECEMBER 18, 2017**

Appellant, D.D. ("Mother"), appeals from the orders entered in the Philadelphia County Court of Common Pleas Family Division, which granted the petition of the Department of Human Services ("DHS") for involuntary

termination of Mother's parental rights to her minor children, A.F., F.F., Jr.

("F.F."), and C.M. ("Children"). We affirm.

The relevant facts and procedural history of this case are as follows.

> The family has been known to the Department of Human Services (DHS) since 2009 pursuant to a General Protective Services (GPS) report which stated that A.F., F.F. and [C.M.]'s Mother tested positive for opiates at the birth of a child on November 5, 2009.
>
> On December 12, 2012, Mother was arrested and charged with drug-related offense.
>
> * * *
>
> On July 17, 2014, Mother was arrested and charged with drug-related offenses.
>
> On August 8, 2014, Mother was arrested and charged with drug-related offenses.
>
> On September 3, 2014, a hearing was held for [C.M.] before [the] Honorable Vincent L. Johnson, who adjudicated [C.M.] dependent based on present inability to provide proper parental care and control and truancy. The [c]ourt ordered DHS to supervise the matter. The [c]ourt ordered Mother for a drug screen, diagnosis assessment[,] and monitoring.
>
> * * *
>
> On January [8], 2015, DHS obtained an Order of Protective Custody (OPC) for A.F. and F.F. and placed them in a foster home through [Lutheran Children and Family Service of Eastern Pennsylvania].
>
> * * *
>
> At the [s]helter [c]are [h]earing on January 8, 2015[,] for A.A. and F.F., the OPC was lifted and their temporary commitment to DHS was ordered to stand.

\*     \*     \*

On January 12, 2015, a [s]helter [c]are [h]earing was held for [C.M.]  Judge Johnson found that Father had absconded with [C.M.] and their whereabouts [were] unknown.  Judge Johnson ordered that the OPC be withdrawn without prejudice, discharged [C.M.'s] temporary commitment to DHS and discharged her dependent petition.  …

On January 20, 2015, A.F. and F.F. were placed with their Paternal Aunt.

\*     \*     \*

At the [s]helter [c]are [h]earing held for [C.M.] on January 23, 2015, the [c]ourt found that Father had absconded with [C.M.]  A [p]arent locator search had been completed and [C.M.] was subsequently located.  [C.M.] was placed in the foster home with her siblings.  The [c]ourt lifted the OPC and discharged the temporary commitment to DHS and committed [C.M.] to the custody of DHS.  Mother…failed to attend the court hearing.

\*     \*     \*

On June 14, 2015, Mother was arrested and charged with numerous drug-related offenses.

At the hearing held on June 18, 2015, the [c]ourt discharge[d] A.A. and F.F.['s] temporary commitment, adjudicated the children dependent based on present inability to provide proper parental care and control and committed the children to the custody of DHS.

\*     \*     \*

At the [p]ermanency [h]earing held on December 14, 2015, the [c]ourt found that A.F., F.F.[,] and [C.M.]'s placement continued to be necessary and appropriate and ordered they remain committed.  Mother was ordered to comply with [this] objective and referred to CEU for a drug screen, assessment and three random drug screens prior

- 3 -

to the next court date. Mother failed to attend the hearing.

On March 4, 2016, Mother was arrested and charged with drug[-]related offenses.

At the [p]ermanency [h]earing held on March 14, 2016, A.F.[,] F.[F.,] and [C.M.] were ordered to remain as committed. Mother failed to attend the hearing.

At the permanency [h]earing held on June 6, 2016, it was reported to the [c]ourt that there had been no compliance with the permanency plan as to Mother. The [c]ourt ordered the children to remain as committed. Mother was ordered to CEU for a drug screen, assessment and three random drug screens prior to the next court date. … All visits, including sibling visits[,] were ordered to occur at the discretion of the children's therapists. Mother failed to attend the hearing.

On August 12, 2016, Mother was arrested and charged with drug-related offenses.

At the [p]ermanency [h]earing held on August 29, 2016, [t]he [c]ourt found A.F., F.F.[,] and [C.M.]'s placement continued to be necessary and appropriate and ordered they remain as committed. It was reported to the [c]ourt that there had been no compliance with the permanency plan as to Mother. Mother failed to attend the hearing.

At the [p]ermanency [h]earing held on November 30, 2016, the concurrent placement goal for the children was identified as adoption. It was reported to the [c]ourt that there had been no compliance with the permanency plan as to Mother as she was non-compliant with CEU referral and court-ordered drug screen, with housing and parenting services. The [c]ourt found that Mother was incarcerated at Riverside Correctional Facility (RCF). The [c]ourt referred Mother to CEU for a drug screen, assessment[,] and three random drug screens prior to the next court date. Mother failed to attend the hearing.

\* \* \*

> On February 22, 2017, during the [t]ermination of [p]arental [r]ights hearing for Mother, the [c]ourt found by clear and convincing evidence that Mother's parental rights, [regarding] A.F., F.F.[,] and [C.M.], should be terminated pursuant to the Juvenile Act. Furthermore, the [c]ourt held it was in the best interest of the children that the goal be changed to [a]doption.

(Family Court Opinion, filed July 12, 2017, at 1-5).

Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), at each docket number on March 22, 2017. On October 27, 2017, this Court *sua sponte* consolidated Mother's appeals.

As a preliminary matter, appellate counsel seeks to withdraw his representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). "After establishing that the antecedent

requirements have been met, this Court must then make an independent evaluation of the record to determine whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006) (quoting **Commonwealth v. Townsend**, 693 A.2d 980, 982 (Pa.Super. 1997)).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor **McClendon**[1] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> \* \* \*
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of

---

[1] **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

> record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361.

Instantly, appellate counsel filed a petition for leave to withdraw. The petition states counsel performed a conscientious review of the record and concluded the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the withdrawal petition, the brief, and a letter explaining Appellant's right to proceed *pro se* or with new privately-retained counsel to raise any additional points Appellant deems worthy of this Court's attention. In his **Anders** brief, counsel provides a summary of the facts and procedural history of the case. Counsel refers to facts in the record that might arguably support the issue raised on appeal and offers citations to relevant law. The brief also provides counsel's reasons for concluding that the appeal is frivolous. Thus, counsel has substantially complied with the requirements of **Anders** and **Santiago**.

Mother has filed neither a *pro se* brief nor a counseled brief with new privately-retained counsel. We will review the issues raised in the **Anders** brief:

> IN ACCORDANCE WITH **ANDERS V. CALIFORNIA**[, 386 U.S. 738, 87 S.CT. 1396, 18 L.ED.2D 493 (1967)], IS THERE ANYTHING IN THE RECORD THAT MIGHT [ARGUABLY] SUPPORT THE APPEAL THAT UPON INDEPENDENT REVIEW OF THE RECORD THE COURT SHOULD CONCLUDE THAT THE [APPEAL] IS NOT WHOLLY FRIVOLOUS?
>
> WHETHER THERE WAS A LEGAL BASIS FOR TERMINATING

MOTHER'S PARENTAL RIGHTS PURSUANT TO 23 PA.C.S.A. [§§] 2511(A)(1), (A)(2), (A)(5), (A)(8) AND (B) AND CHANGING THE GOAL FROM REUNIFICATION TO ADOPTION[?]

(**Anders** Brief at 6).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

**In re Z.P.**, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting **In re I.J.**, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> **In re B.L.W.**, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> **In re Adoption of A.C.H.**, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means

testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [his/her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

- 9 -

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In***

*re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of [her]…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

> Termination under Section 2511(a)(1) involves the following:

>> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

>>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for [her]…conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination

- 11 -

petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of [her]…parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*,

719 A.2d 327, 330 (Pa.Super. 1998).

With respect to an incarcerated parent, this Court has stated:

> [I]ncarceration alone does not provide sufficient grounds for the termination of parental rights. Likewise, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and fails to take affirmative steps to support a parent-child relationship. As such, a parent's responsibilities are not tolled during incarceration.

*In re Adoption of K.J., supra* at 1133 (internal citations omitted).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability

are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have [her]…rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of [her]…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with…[his/her] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of [her]…child is converted, upon the failure to fulfill [her]…parental duties, to the child's right to have proper parenting and fulfillment of…[his/her] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the reasoned opinion of the Honorable Lyris F. Younge, we conclude Mother's issues merit no relief. The Family court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Family Court Opinion, *supra* at 6-9) (finding: **(1-2)** at termination hearing, social worker testified that Mother's single case plan objectives were to address issues in housing, drug and alcohol abuse, and

- 15 -

visitation; social worker stated that Mother failed to comply with single case plan objectives since January 2016; Mother failed to engage in or complete drug and alcohol treatment; Mother testified that she was incarcerated from August 11, 2016 to February 21, 2017; Mother failed to provide court with documentation to substantiate completion of drug and alcohol treatment program she claimed to have attended; social worker also testified that Mother failed to complete housing service through ARC, failed to obtain suitable housing, and was transient throughout dependency proceedings; during twenty-five months Children were in care of DHS, Mother's supervised visits were not expanded to include unsupervised visits, and Mother infrequently visited Children; social worker testified that Children depended on their foster parents as consistent daily caregivers; social worker stated that Children had bonded with their foster parents and would not suffer irreparable harm if court terminated Mother's parental rights; social worker testified credibly; court found DHS met burden by clear and convincing evidence to terminate Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8); 2511(b)). Following our independent review of the record, we conclude the appeal is wholly frivolous. **_See Palm,_** **_supra_**. Accordingly, we affirm the order terminating Mother's parental rights and grant counsel's petition to withdraw.

Orders affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/18/2017</u>

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: C.M.M. | : | CP-51-DP-0001567-2014 |
| | : | CP-51-AP-000065-2017 |
| | : | |
| IN RE: A.F. | : | CP-51-DP-000020-2015 |
| | : | CP-51-AP-000066-2016 |
| | | |
| IN RE: F.F. | : | CP-51-DP-000021-2015 |
| | : | CP-51-AP-000064-2016 |
| | : | |
| | : | |
| APPEAL OF: D.D., Mother | : | Superior Court |
| | : | No. 991 EDA 2017 |
| | : | No. 986 EDA 2017 |
| | : | No. 989 EDA 2017 |

OPINION

**Younge, J.**

This Appeal arises from this Court's Order on February 22, 2017, terminating the parental rights of *D. D.* ("Mother"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office. John Capaldi, attorney for Mother, filed a timely appeal from the February 22, 2017 order terminating mother's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

The family has been known to the Department of Human Services (DHS) since 2009 pursuant to a General Protective Services (GPS) report which stated that A.F., F.F. and C.M.M.'s Mother tested positive for opiates at the birth of a child on November 5, 2009.

On December 12, 2012, Mother was arrested and charged with drug-related offense.

On May 21, 2014, C.M.M. failed to appear before a Juvenile Master Vincent Guisini pursuant to a truancy petition filed by the school District of Philadelphia. Master Guisini ordered C.M.M. attend school daily with no latenesses, cuts, or suspensions. The Court cautioned C.M.M.'s absences may only be excused with a physician's note. The Court took notice the family had never

appeared at truancy court and ordered family to appear at C.M.M.'s scheduled next hearing. Master Guisini ordered DHS to file a dependent petition for C.M.M.

Truancy prevention services through Logan Olney were arranged to assist the family. The family failed to meet with their assigned case manager after multiple home visit attempts. The case manager stated upon visits to the home the television was heard inside the home and a child would look out the window. However, an adult failed to respond or answer the door.

During the 2013-2014, DHS school year, C.M.M. had 69 unexcused absences. During the 2012-2013 school year, C.M.M. had 30 unexcused absences.

On June 11, 2014, DHS received a General Protective Services (GPS) report alleging the family was residing in unfit living conditions. Mother, C.M.M., F.F. A.F. and C.M.M.'s father were residing in the home. The home lacked electricity and water service. The home was infested with bed bugs. Mother and Father were unemployed and abused drugs. The home was heavily trafficked with people. The police had been dispatched to the home for domestic disputes numerous times. The report was substantiated.

On July 17, 2014, Mother was arrested and charged with drug-related offenses.

On August 8, 2014, Mother was arrested and charged with drug-related offenses.

On September 3, 2014, a hearing was held for C.M.M. before Honorable Vincent L. Johnson, who adjudicated C.M.M. dependent based on present inability to provide proper parental care and control and truancy. The Court ordered DHS to supervise the matter. The Court ordered Mother for a drug screen, diagnosis assessment and monitoring.

On September 19, 2014, In-Home Services were implemented by Community Umbrella Agency (CUA) Turning Points for Children.

On October 28, 2014, CUA held an Initial Single Case Plan (SCP) meeting. The goal for C.M.M. was identified as "stabilize family". The parental objectives for Mother including the following: 1) complete court-ordered CEU assessment; 2) obtain appropriate housing and maintain utilities; 3) attend budget seminar at Turning Points for Children; 4) ensure that the children attend school on a daily basis and arrive on time; and 5) obtain employment or attend the Welfare to Work Program.

On December 1, 2014, an initial Permanency Hearing was held for C.M.M. The Court found that the CUA case manager stated she last saw C.M.M. with her father at the home of paternal grandmother. The Court found C.M.M. was enrolled at                School. However, it was revealed C.M.M. missed 14 days of school. The Court further noted Father appeared to be transient. DHS/CUA supervision was ordered to stand. Mother was referred to the CEU for a drug screen, dual diagnosis assessment, and monitoring when she availed herself Mother was ordered to appear at the next court hearing; DHS/CUA supervision was ordered to stand. CUA was ordered to concurrently plan for placement for C.M.M.

On January 6, 2015, DHS received a General Protective Services (GPS) report alleging that A.F., F.F. and Mother were residing in a home with wood boards covering the windows. There was no food in the home. The children were unkempt. Mother used heroin and cocaine. Mother engaged in prostitution to purchase drugs. There were other active drug users residing in the home. The report was determined to be valid.

2

On January 6, 2015, DHS went to the home of Mother. Mother admitted to the DHS representative she was an active heroin user. There were other active drug users residing in the home. Mother stated A.F. and F.F.'s father had introduced her to drugs. Father was not involved in caring for the children. DHS observed that the windows were covered with wood. There was no food in the home. There was no door handle on the side door and a cloth was stuffed in the door handle opening. The house was extremely cluttered. There were holes in the walls and ceilings. The toilet was only functional if water was manually added to the tank.

On January 8, 2015, DHS obtained an Order of Protective Custody (OPC) for A.F. and F.F. and placed them in a foster home through Asociatcion Puertorriquenos en Marcha (APM).

On January 7, 2015, DHS learned that Mother had been given money to assist her in acquiring appropriate housing for the family. Mother failed to acquire the housing.

At the Shelter Care Hearing on January 8, 2015 for A.A. and F.F., the OPC was lifted and their temporary commitment to DHS was ordered to stand.

DHS received an allegation that Father had admitted himself into a drug rehabilitation facility.

On January 9, 2015, a CUA Safety Conference meeting was held. DHS learned that C.M.M. had been residing with Father and Paternal Grandmother in Bensalem PA. Paternal Grandmother informed CUA case manager that Father's whereabouts were unknown. Paternal Grandmother stated she was unable to care for C.MM.

On January 9, 2015, DHS called Mother. Mother informed DHS that she resided in public housing and that C.M.M. was not on the lease for her apartment. Mother further stated that C.M.M. was not in school and that she was unable to enroll C.M.M. in school because she did not have custody of C.M.M. Mother stated she did not know Father's whereabouts and Mother was unable to continue caring for C.M.M.

On January 9, 2015, DHS obtained an OPC for C.M.M. and traveled to Mother's home to retrieve C.M.M. Upon arrival to the home, DHS learned that C.M.M. was not present. Mother stated Father had come to the home and left with C.M.M. when he learned that DHS was going to take custody of C.M.M. C.M.M's whereabouts remained unknown to DHS. Mother stated she no longer wished to have C.M.M. placed. Mother had spoken to the landlord to make arrangements to have C.M.M. reside in her apartment. Mother stated Father had been moving from house to house in the ⁻⁻ ⁻ neighborhood of Philadelphia. C.M.M.'s whereabouts remained unknown to DHS.

On January 10, 2015, DHS spoke to paternal grandmother and asked her to inform Father of the severity of the situation. DHS advised Paternal Grandmother to produce C.M.M. immediately. DHS requested that Mother contact DHS if Father returned to the home with C.M.M.

On January 12, 2015, a Shelter Care Hearing was held for C.M.M. Judge Johnson found that Father had absconded with C.M.M. and their whereabouts weree unknown. Judge Johnson ordered that the OPC be withdrawn without prejudice, discharged C.M.M. temporary commitment to DHS and discharged her dependent petition. Judge Johnson further ordered that DHS hire an on-ground private investigator to locate C.M.M. and when C.M.M. was located, DHS obtain an OPC for her with police assistance if necessary.

On January 20, 2015, A.F. and F.F. were placed with their Paternal Aunt.

3

On January 21, 2015, DHS called Mother and she inquired about the whereabouts of A.A. and F.F. DHS learned that Mother was at home of Paternal Grandmother. DHS planned to make an unannounced visit at the home of Paternal Grandmother to attempt to locate C.M.M.

Mother called DHS later on January 21, 2015. Mother reported she was with C.M.M. and Father was present in the home. Mother and Father agreed to permit DHS to place C.M.M. only if she resided in the foster home with A.F. and F.F. DHS obtained an OPC for C.M.M. The private investigator met DHS at the home of Mother and DHS escorted C.M.M. to the home of cleared foster care provider. Father agreed to enter drug rehabilitation on January 23, 2015.

At the Shelter Care Hearing held for C.M.M. on January 23, 2015, the Court found that Father had absconded with C.M.M. A Parent locator search had been completed and C.M.M. was subsequently located. C.M.M. was placed in the foster home with her siblings. The Court lifted the OPC and discharged the temporary commitment to DHS and committed C.M.M. to the custody of DHS. Mother and Father failed to attend the court hearing.

C.M.M. had 71 unexcused absences and 5 latenesses during the 2013-2014 school year. C.M.M. had 18 unexcused absences during the 2014-2015 school year and was expelled from school because she had not attended since approximately the end of October 2014.

On February 5, 2015, A.F. putative father was identified and ordered to undergo paternity testing.

The case was continued at hearings scheduled on February 5, 2015, March 19, 2015, April 30, 2015, May 11, 2015 and May 27, 2015.

On April 10, 2015 DHS received a GPS report alleging that A.F. and F.F. were observed engaging in inappropriate sexual behavior. The report stated that A.F and F.F. stated that they had previously watched sexually explicit movies with C.M.M. A.F., F.F. and C.M.M. stated that they learned the behavior from the videos. The report was determined to be valid.

On June 14, 2015, Mother was arrested and charged with numerous drug-related offenses.

At the hearing held on June 18, 2015, the Court discharge A.A. and F.F. temporary commitment, adjudicated the children dependent based on present inability to provide proper parental care and control and committed the children to the custody of DHS.

On September 15, 2015 a continuance was granted as to C.M.M.'s matter and adjudication was further deferred. Father was referred to the CEU for a drug and alcohol screen, assessment and three random drug screens prior to the next court date. Father failed to attend the hearing.

On August 18, 2015 CUA revised the Single Case Plan (SCP). The children's goal was identified as "return to parent". The parental objectives for Mother included the following: 1) stabilize drug and alcohol issues 2) complete court-ordered CEU assessment 3) locate and obtain stable housing and advise CUA of progress made; 4) obtain employment or attend the Welfare to Work Program 5) attend the Archieving Reunification Center (ARC) when referred 6) address the children's in appropriate sexual behavior 7) sign all forms for the children to undergo JJPI evaluations; 8) sign releases for the children to have oral surgery and 9) participate in supervised visits with the children at the agency. Mother was invited to participate in the development of the plan by telephone on September 15, 2015. Mother failed to attend the SCP meeting.

4

On November 19, 2015, the Court found that C.M.M. had previously been adjudicated dependent on September 3, 2014. The Court adjudicated C.M.M. dependent based on present inability to provide proper parental care and control and ordered C.M.M. remain committed. Mother failed to attend the hearing.

At the Permanency Hearing held on December 14, 2015, the Court found that A.F., F.F. and C.M.M.'s placement continued to be necessary and appropriate and ordered they remain committed. Mother was ordered to comply with his objective and referred to CEU for a drug screen, assessment and three random drug screens prior to the next court date. Mother failed to attend the hearing.

On March 4, 2016, Mother was arrested and charged with drug related offenses.

At the Permanency Hearing held on March 14, 2016, A.F. , F.F. and C.M.M. were ordered to remain as committed. Mother failed to attend the hearing.

At the permanency Hearing held on June 6, 2016, it was reported to the Court that there had been no compliance with the permenancy plan as to Mother. The Court ordered the children to remain as committed. Mother was ordered to CEU for a drug screen, assessment and three random drug screens prior to the next court date. Father failed to attend the hearing. All visits, including sibling visits were ordered to occur at the discretion of the children's therapists. Mother failed to attend the hearing.

On August 12, 2016, Mother was arrested and charged with drug related offenses.

At the Permanency Hearing held on August 29, 2016, The Court found A.F., F.F. and C.M.M's placement continued to be necessary and appropriate and ordered they remain as committed. It was reported to the Court that there had been no compliance with the permanency plan as to Mother. Mother failed to attend the hearing.

At the Permanency Hearing held on November 30, 2016, the concurrent placement goal for the children was identified as adoption. It was reported to the Court that there had been no compliance with the permanency plan as to Mother as she was non-compliant with CEU referral and court-ordered drug screen, with housing and parenting services. The Court found that Mother was incarcerated at Riverside Correctional Facility (RCF). The Court referred Mother to CEU for a drug screen, assessment and three random drug screens prior to the next court date. Mother failed to attend the hearing.

The matter was the listed on a regular basis before judges of the Philadelphia Court of Common Pleas, Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. § 6351, and evaluated for the purpose of reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On February 22, 2017, during the Termination of Parental Rights hearing for Mother, the Court found by clear and convincing evidence that Mother's parental rights, A.F., F.F. and C.M.M., should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to Adoption.

The appeal of Mother is as follows:

5

## Issues

1) Whether under the Juvenile Act, 42 Pa. C.S. section 6351, and 55 Pa. Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Mother with her children and whether the goal change to Adoption was the disposition well suited to the safety, protection and physical, mental and moral welfare of the children.

2) Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

## Discussion

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, mother's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the children. The Court found by clear and convincing evidence that the mother refused or failed to perform her parental duties.

In the instant matter, the social worker testified Mother's SCP objectives outlined addressing issues of housing, drug and alcohol, visitation, signing consents and releases and Achieving Reunification Center. (N.T. 2/22/17, pg. 16) Testimony of the social worker revealed during the entire life of the case, from January 2016 until the present hearing, Mother failed to be compliant with the objectives. (N.T. 2/22/17 pgs. 18-22) Social worker testified Mother was did not engage or complete drug and alcohol treatment .(N.T. 2/22/17, pgs. 17-18) Mother admitted in her testimony she was incarcerated from August 11, 2016 to February 21, 2017. (N.T. 2/22/17, pg. 28) Mother was unable to provide the Court with any documentation that would substantiate completion of a drug and alcohol treatment program she attended. (N.T. 2/22/17, pg. 33)

6

Furthermore social worker testified Mother failed to complete the housing service through ARC. (N.T. 2/22/17, pg. 22) Social worker revealed Mother failed to have suitable housing and had been transient since the inception of the life of the case. (N.T. 2/22/17, pg. 22)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

In the present matter, during the twenty five months (25) the children have been in DHS care, testimony of social worker stated the supervised visits Mother were not expanded to include unsupervised visits. (N.T. 2/22/17, pg. 20) Furthermore, social worker's testimony revealed Mother did not frequently visit with the children while the children were in custody of DHS. (N.T. 2/22/17, pg 19) Social worker testified during the tenure of custody DHS was unable to offer visits at the agency as Mother's whereabouts were unknown. (N.T. 2/22/17, pg. 20)

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa .Super. 2002).

The Court's decision was reflective of testimony which revealed a lack of documentation Mother was receiving treatment for drug and alcohol addition. (N.T. 2/22/17, pg. 61) Moreover, the Court found witnesses credibility and Mother's non-compliance concerning. (N.T. 2/22/17, pg. 60).

§2511 (a)(5) requires that :

(5)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

(8)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the

7

date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate mother's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. *In re Involuntary Termination of C.W.S.M and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000).

In the instant matter, the testimony of social worker established A.F., F.F. and C.M.M. depended their foster parents to be their consistent caregivers meet their daily needs. (N.T. 2/22/17, pgs. 24 74, 79) Social worker testified C.M.M. loved her Mother however wanted to reside in her "forever home" with her current caregiver. (N.T. 2/22/17, pg. 25) Further testimony of the social worker revealed C.M.M. had a genuine bond with her caregiver and a separation would be traumatic (N.T. 2/22/17, pg. 24) Social worker testified as a result of Mother's lack of involvement in C.M.M.'s life for two years, C.M.M. would not suffer any irreparable emotional harm if Mother's parental rights were terminated. (N.T. 2/22/17, pgs. 62-64) The social testified A.F. had a great bond with her foster care family. (N.T. 2/22/17, pg. 74) A.F. depended on her foster care parents to be the consistent central caregiver in her life. (N.T. 2/22/17, pg. 74-75) The social worker testified A.F. was mature for her age and would suffer no irreparable harm if Mother's rights were terminated. (N.T. 2/22/17, pgs. 75-76). Furthermore, testimony of the social worker testified F.F. was bonded with his paternal grandparents. (N.T. 2/22/17, pg. 79). The social worker testified F.F. did not have a relationship with his Mother and believed F.F. would suffer no irreparable harm if Mother's rights were terminated. (N.T. 2/22/17, pg. 79)

The Court found the social worker's testimony credible. (N.T. 2/22/17, pg. 60) The Court stated concern about Mother's failure to complete any of the objectives established for reunification with her children. (N.T. 2/22/17, pg. 60) The Court also stated concern for the two year time frame of non-compliance and the needs of the children. (N.T. 2/22/17, pg. 61) The Court also considered it's decision upon Mother's failure to provide documentation of drug and alcohol treatment completion and lack of visitation with the children. (N.T. 2/22/17, pgs. 19, 60-61). The Court found convincing the social worker's testimony that the current foster parent for C.M.M. wanted to adopt C.M.M. (N.T. 2/22/17, pg. 61) Furthermore the Court found credible the social worker testimony C.M.M. stated she wanted to be adopted by her current foster care

8

parent. (N.T. 2/22/17, pg. 23) The Court concluded F.F. was extremely bonded with his grand-parents and doing well in their care. (N.T. 2/22/17, pgs. 81-82)

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the children, to change their goal to Adoption (N.T. 2/22/17, pgs. 61,81-82))

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statu-tory burden by clear and convincing evidence regarding the termination of parental rights pursu-ant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause A.F., F.F. and C.M.M. to suffer irreparable harm and it is in the best in-terest of the children based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate Mother's parental rights.

Accordingly, the Trial Court's Order entered on February 22, 2017, terminating the parental rights of mother,    Ɖ, Ɖ,          , should be properly affirmed.

By the Court:

9

# THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: C.M. | : | CP-51-DP-0001567-2014 |
| | : | CP-51-AP-000065-2017 |
| | : | |
| IN RE: A.F. | : | CP-51-DP-000020-2015 |
| | : | CP-51-AP-000066-2016 |
| | : | |
| IN RE: F.F. | : | CP-51-DP-000021-2015 |
| | : | CP-51-AP-000064-2016 |
| | : | |
| APPEAL OF: D.D., Mother | : | Superior Court |
| | : | No. 991 EDA 2017 |
| | : | No. 986 EDA 2017 |
| | : | No. 989 EDA 2017 |

---

## PROOF OF SERVICE

I hereby certify that this court is serving, today, July , 2017 the foregoing Opinion, by regular mail, upon the following person(s):

James Wise, Esquire
City of Philadelphia Law Department
1501 Arch Street, 16th Floor
Philadelphia, PA 19107

John Capaldi
1812 Fox Chase Road
Philadelphia, PA 19107

John Hayburn, Esquire
1809 Earlington Road
Havertown, PA 19083

BY THE COURT

Honorable Lyris F. Younge